# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLOTTE MOORE, ) | 1:06cv0478 DLB |
| ) | |
| Plaintiff, ) | ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT |
| ) | |
| v. ) | |
| ) | |
| MICHAEL J. ASTRUE, Commissioner ) | |
| of Social Security, ) | |
| ) | |
| Defendant. ) | |

## **BACKGROUND**

Plaintiff Charlotte Moore ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits pursuant to Title II of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Dennis L. Beck, United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. On August 30, 2006, the Honorable Anthony W. Ishii reassigned the case to the Honorable Lawrence J. O'Neill for all purposes. Due to the elevation of Judge O'Neill to District Court judge, the action was assigned to the Honorable Dennis L. Beck on April 23, 2007.

**FACTS AND PRIOR PROCEEDINGS[2]**

Plaintiff filed for disability insurance benefits in September 1994, alleging disability since June 22, 1993, due to carpal tunnel syndrome (CTS") in both arms, hands and wrists, and neck and shoulder pain. AR 124-127. In December 1996, Plaintiff had her first hearing before an Administrative Law Judge ("ALJ"). AR 452-465. He denied her claim on January 24, 1997. AR 38-63. On July 9, 1998, the Appeals Council vacated the decision and remanded it for further proceedings. AR 470-473.

Pursuant to the Order of Remand, an ALJ held a second administrative hearing in January 1999. AR 64-85. On June 26, 1999, the ALJ issued a decision denying Plaintiff's claims. AR 581-597. In July 2000, the Appeals Council again vacated the decision and remanded the action for further proceedings. AR 601-605.

A third administrative hearing was held on January 24, 2001. AR 86-123. The ALJ denied Plaintiff's claims on February 15, 2001. AR 717-729. The Appeals Council denied review on May 14, 2002, but this Court ordered the case remanded on June 17, 2004. AR 735-751.

A fourth hearing was held in December 2005. AR 771-789. ALJ James Berry denied her claims on March 14, 2006. AR 672-686.

Hearing Testimony

Plaintiff did not testify at her most recent hearing. Plaintiff did testify at the January 24, 2001, hearing, held in Bakersfield, California. AR 86. Plaintiff appeared with her attorney, Rosemary Abarca. Vocational Expert ("VE") Kenneth Ferra also appeared and testified. AR 86.

Plaintiff testified that she lived with her daughter and her two grandchildren, ages 11 and 13. She receives deferred retirement in the amount of $403 per month. Her daughter does not work and receives AFDC.

Plaintiff was 52 years old at the time of the hearing. She was 5'4" tall and weighed 283 pounds. She is right-handed and received a GED. AR 91. She weighed over 200 pounds when

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

1   she last worked, which was in June 1993.  AR 91-92.  She worked for the County Department of
2   Human Services and provided home care to the elderly and disabled.  AR 92.  She also provided
3   childcare in the Family Services Center.  AR 92.   Plaintiff had worked for the County since
4   1978.
5       When asked why she stopped working on June 22, 1993, Plaintiff testified that she could
6   no longer use both of her hands.  She also explained that her position was phased out, but that
7   she stopped working due to her physical ailments prior to the time the position was phased out.
8   AR 93.  She testified that her hands were numb and tingled, and that she had trouble grasping
9   things.  AR 94.
10      Plaintiff testified that her right hand has stayed about the same since she stopped working,
11  but that her left hand has gotten worse.  Her neck hurts when she uses her shoulders, and she
12  indicated that this is connected to the CTS.  AR 95.
13      Plaintiff believed that she could lift and carry ten pounds, but would have to use both
14  hands.  AR 96.  She has difficulty with fine manipulation in both hands and has difficulty
15  gripping a pencil, washing her hair and performing personal care.  AR 97.  She has had splints
16  since 1995 and they decrease the pain while she is using her hands. AR 98.  She has also had
17  physical therapy and steroid treatments, and has requested surgery.  AR 99.
18      Plaintiff testified that she became depressed after she stopped working, but could have
19  been depressed prior to stopping.  AR 100-101.  She saw Dr. Madahair once a week for one and
20  a half years.  AR 101.  She felt better when she was taking Prozac.  She stopped seeing him after
21  workers compensation "cut [her] off."  She still feels depressed, but when she takes her
22  medicine, she can function.  AR 103.  She feels withdrawn compared to when she was working.
23  AR 104.  She testified that her depression interferes with her ability to work because she forgets
24  and can't focus or concentrate on the task.  AR 117.  She also believed that it interfered with her
25  everyday functioning.  AR 118.
26      After she stopped working, Plaintiff gained 100 pounds because she could not do physical
27  things.  AR 103.  She goes to church and tries to walk when she can.  AR 103.  Her daughter
28  does most of the chores.  AR 108.

Plaintiff believed that she could not work because she could not do anything for any length of time (sit, stand or focus).  She also gets angry and fatigued.  AR 106.

For the first hypothetical, the ALJ asked the VE to assume a person of Plaintiff's age, education and experience.  This person could lift and carry 100 pounds occasionally and 50 pounds frequently, stand, walk and sit for six to eight hours, but could not power grip with the upper extremities.  This person also retains the ability to maintain attention and concentration for two hour increments, up to a total of eight hours, and can maintain persistence for the same amount of time.  This person could interact with others, adapt to usual changes, maintain regular attendance, and perform routine tasks. The VE testified that this person could perform Plaintiff's past relevant work.  AR 121-122.

Plaintiff's attorney asked the VE to assume that this person could not pick up and carry over ten pounds, and needed to avoid frequent bilateral manipulation and tasks involving gross handling.  This person would be moderately impaired in her ability to interact with the public, coworkers and supervisors, and is moderately impaired in her ability to maintain concentration and attention for up to two hours.  This person could not perform Plaintiff's past relevant work or any other positions.  AR 122-123.

Medical Record[3]

On December 17, 1994, Plaintiff underwent a consultive physical examination by Adora Matthews, M.D.  She reported that she had been suffering from depression for a long time and that it is worsened by her CTS.  Dr. Matthews performed a limited psychiatric evaluation, during which Plaintiff exhibited increasing anxiety, flat affect and suboptimal concentration.  Dr. Matthews diagnosed depression based on Plaintiff's report and the results of the evaluation, which he described as "consistent with a probable clinical depression."  He opined that Plaintiff's ability to interact with the public, supervisors and coworkers was moderately limited.  Her ability to understand, remember and carry out simple one or two step job instructions was minimally

---

[3] The medical evidence relating to Plaintiff's physical conditions has been set forth numerous times in prior proceedings.  As the instant action pertains only to Plaintiff's mental condition, the Court will only summarize evidence related thereto.

4

limited, and her ability to understand, remember and carry out detailed instructions was minimally to moderately limited. She was moderately limited in her ability to maintain concentration and attention in two hour intervals. Her ability to withstand stress was moderately to severely limited. Dr. Matthews opined that Plaintiff's prognosis was fair to good and that the duration of her symptoms would be six months to one year. AR 270-276.

On January 27, 1995, a State Agency physician determined that Plaintiff had slight mental limitations in most areas. AR 196-204. A second State Agency physician determined that Plaintiff was moderately limited in her ability to understand, remember and carry out detailed instructions, but could perform simple, repetitive tasks. AR 212-215.

In August 1995, an investigation was conducted as part of Plaintiff's workers compensation claim. AR 403-417. The investigator opined that Plaintiff was not regarded as a depressed person while working, and thought that her depression, if it existed, might be related to the termination of her employment or a medical condition. AR 417.

Also in August 1995, Plaintiff was evaluated by Marvin A. Klemes, M.D. On mental status examination, there was no evidence of anxiety or true clinical depression, except for a few instances when she became tearful and cried. Her memory was fairly good, she expressed her thoughts clearly and she concentrated well. Dr. Klemes opined that Plaintiff was experiencing normal human reactions to her orthopedic condition and that she did not have a mental disorder. AR 418-428.

On September 20, 1995, Plaintiff saw E. Richard Dorsey, M.D. On mental status examination, Plaintiff had a depressed mood and wept easily. Her thought content was anxious and depressive. She could not recall three of three objects. Dr. Dorsey diagnosed major depression, single episode, severe, and opined that she was not mentally able to do all duties related to her position with the County. He recommended that she receive psychotherapy and more aggressive antidepressant medications over the next three to six months. AR 431-439.

Plaintiff began receiving psychiatric care from Truxton Psychiatric Group in 1996. AR 309-358. Plaintiff indicated that her depression was related to her pain and reported feeling hopeless and anxious. AR 356-358. During her treatment, she was placed on Prozac and

1  indicated that it seemed to be helping.  AR 339, 352.  She also frequently complained that she
2  was having trouble sleeping and concentrating.  AR 346, 348.  On April 18, 1996, S.A.
3  Manohara, M.D., indicated that Plaintiff was totally disabled due to major depression.  AR 444.
4  In June 1996, Plaintiff explained that she missed working with the elderly and wished she could
5  return to work.  She was still depressed and in pain, but was coping better and improving.  AR
6  341, 343, 344.  By the end of July, she indicated that she was again very depressed but her
7  physician indicated that she was showing signs of improvement (i.e., taking more interest in
8  things).  AR 330.  In August, she was again feeling better and improving.  AR 323-325.  She
9  continued to improve in October and November.  AR 309-311.

Plaintiff continued her treatment with Dr. Manohara through 1998.  AR 481-577.
Although there were instances when she reported feeling better, the majority of her treatment
notes reflect depression resulting from her pain.

In 1998, Plaintiff began treatment at Kaiser Permanente.  In September 1998, Jessy Jacob,
M.D., her treating physician, advised her to increase her Prozac.  He also repeatedly referred her
to a psychiatrist, although she had not made an appointment with one as of January 2001.  AR
646-671.  She continued to receive antidepressant medication.

In December 1999, Plaintiff saw Norman J. Barr, M.D., whom she had first seen in 1997.
She appeared depressed and tearful.  Dr. Barr stated that her overall psychiatric condition
remained relatively unchanged, despite treatment, since he first saw her in February 1997.  He
agreed with Dr. Phelps that her symptoms are, in part, related to her obesity and sedentary
lifestyle, as well as her worsening medical conditions.  He opined that she had no psychiatric
work restrictions beyond a prophylactic preclusion from undue stress.  He did not believe that
Plaintiff need vocational rehabilitation because she was not a Qualified Injured Worker.  AR
633-643.  He did,  however, opine that Plaintiff had slight to moderate limitations in six of eight
work function areas.  AR 644.

On March 10, 2000, Plaintiff saw Jerome L. Schulte, M.D., a qualified medical examiner.
On mental status examination, she presented as quite markedly depressed and had a very flat
affect.  He diagnosed major depression, recurrent, severe, without psychotic feathers.  He opined

6

that Plaintiff began developing symptoms of temporary partial psychiatric disability as early as January 1994, and became seriously psychiatrically disabled in April 1996. He believed that she could not have worked from April 1996 through the date of his opinion. He further opined that Plaintiff suffered from a psychiatric disorder of a pain disorder with a general medical condition and psychological factors, based on her CTS and pain. Dr. Schultz found that Plaintiff had slight to moderate limitations in most areas of functioning. AR 612-629.

ALJ's Findings

The ALJ found that Plaintiff had the severe impairments of obesity, CTS, hypertension and depression. AR 676. After reviewing the medical evidence, he determined that she retained the residual functional capacity ("RFC") to lift and carry 100 pounds occasionally and 50 pounds frequently, and could stand, walk or sit for six hours each. She was limited to occasional power gripping bilaterally, and needed to avoid undue stress in the workplace. Mentally, Plaintiff was able to perform simple repetitive tasks, maintain attention and concentration, persistence and pace, relate to and interact with others, adapt to usual changes in work settings, and adhere to safety rules. Based on this RFC, the ALJ determined that Plaintiff could not return to her past work as a home attendant due to the required mental demands. AR 683.

Since the ALJ found that Plaintiff's ability to work was significantly compromised at all exertional levels due to her non-exertional and mental limitations, the ALJ sought the testimony of a VE. Based on the VE's testimony, the ALJ concluded that Plaintiff could perform unskilled medium work, such as a wall cleaner or window cleaner. AR 685.

**SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at

401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen,* 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20 C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994).[4] Applying this process in this case, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of disability; (2) has an impairment or a combination of impairments that is considered "severe" (obesity, CTS, hypertension and depression) based on the requirements in the Regulations (20 CFR §§ 416.920(b)); (3) does not have an impairment or combination of impairments which meets or equals one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4;

---

[4] All references are to the 2002 version of the Code of Federal Regulations unless otherwise noted.

1  (4) cannot perform her past work because of the mental demands, but (5) retains the RFC to
2  perform a substantial number of jobs in the national economy. AR 685-686.
3        Plaintiff argues that the ALJ failed to properly evaluate Dr. Barr's opinion.

**DISCUSSION**

5        Plaintiff argues that the ALJ ignored Dr. Barr's opinion in finding that Plaintiff retained
6  the RFC to perform other work. She believes that, contrary to applicable law, the ALJ neither
7  offered a conclusion as to Dr. Barr's opinion nor set forth his reasons for ignoring it. Plaintiff
8  focuses on Dr. Barr's opinion that Plaintiff was slightly to moderately limited in her ability to
9  maintain a work pace appropriate to a given workload, and contends that even though he
10 expressly credited Dr. Barr's opinion, he ignored this limitation. AR 644. According to Plaintiff,
11 had this limitation been incorporated in the RFC, a finding of disabled would have followed
12 based on the VE's testimony.
13       Cases in this circuit distinguish among the opinions of three types of physicians: (1) those
14 who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant
15 (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining
16 physicians). As a general rule, more weight should be given to the opinion of a treating source
17 than to the opinion of doctors who do not treat the claimant. *Winans v. Bowen*, 853 F.2d 643,
18 647 (9th Cir.1987).
19       The opinion of an examining physician is, in turn, entitled to greater weight than the
20 opinion of a nonexamining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir.1990);
21 *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir.1984). As is the case with the opinion of a treating
22 physician, the Commissioner must provide "clear and convincing" reasons for rejecting the
23 uncontradicted opinion of an examining physician. *Pitzer*, 908 F.2d at 506. And like the opinion
24 of a treating doctor, the opinion of an examining doctor, even if contradicted by another doctor,
25 can only be rejected for specific and legitimate reasons that are supported by substantial evidence
26 in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir.1995).
27       Plaintiff is correct insofar as the ALJ expressly credited Dr. Barr's opinion as to
28 Plaintiff's mental status. AR 682. He explained that Dr. Barr examined Plaintiff on multiple

occasions and that his findings appeared internally consistent. AR 682. He contrasted Dr. Barr's opinion with the opinion of Dr. Schulte and explained why he gave Dr. Schulte's opinion less weight. AR 682. For example, unlike Dr. Barr, Dr. Schulte found that Plaintiff could not perform her prior work. Despite this, though, and further explaining why he supported Dr. Barr's opinion, the ALJ explained that even Dr. Schulte implicitly believed Plaintiff could perform some type of work because he recommended her for vocational rehabilitation. AR 682. Indeed, the ALJ is responsible for resolving the conflicts in the medical evidence and he sufficiently explained his rationale here. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).

Plaintiff is also correct that Dr. Barr completed a "Work Function Impairment Form" on which he indicated Plaintiff's level of impairment in eight work function categories. In the area of "maintain[ing] a work pace appropriate to a given workload," Dr. Barr opined that Plaintiff was slightly to moderately limited. AR 644. Yet Plaintiff is not correct as to the meaning that she attaches to this limitation, or insofar as she argues that the ALJ needed to accept it (or explain his rejection) because he accepted Dr. Barr's overall opinion.

While Dr. Barr opined that Plaintiff had a slight to moderate limitation in maintaining appropriate work pace, he found that Plaintiff was not a Qualified Injured Worker and did not need vocational rehabilitation. Therefore, even considering the limitations that he imposed, Dr. Barr believed that Plaintiff could return to her past relevant work. Contrary to Plaintiff's suggestion, the limitation does not automatically translate into a finding that Plaintiff cannot perform work. In fact, the ALJ included Dr. Barr's only specific functional limitation, a prophylactic preclusion from undue stress, in his RFC. As Defendant points out, Plaintiff's previous work was semi-skilled, and if Dr. Barr opined that she could return to this work, it was certainly reasonable to assume that she could also have performed the simple, unskilled work identified by the VE. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). Indeed, the Court must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation. *Id.* Given Dr. Barr's conclusion that Plaintiff could return to her prior work despite her limitations and the ALJ's adoption of Dr. Barr's explicit preclusion from undue stress, the ALJ's interpretation of his treatment records was reasonable.

1       Even assuming that the limitation conflicted with Dr. Barr's ultimate finding, the ALJ
2 was not required to accept it.  The ALJ need not believe everything a physician sets forth, and
3 may accept all, some, or none of the physician's opinions.  *Magallanes*, 881 F.2d at 753-754.
4 Nor does the ALJ need to specifically say "I reject the treating physician's opinions because ..."
5 so long as the record reveals specific, legitimate inferences that may be drawn from the ALJ's
6 opinion justifying the decision not to adopt the treating physician's opinion.  *Magallanes*, 881
7 F.2d at 755.  To the extent the ALJ can be viewed as having rejected this limitation, it can
8 certainly be inferred that he did so because Dr. Barr ultimately concluded that Plaintiff could
9 return to her past work.

10       Finally, Plaintiff contends that the ALJ was required to translate Dr. Barr's findings from
11 the workers' compensation setting in which they were made into the Social Security setting.
12 Citing *Desrosiers v. Sec'y Heath and Human Serv.*, 846 F.2d 573, 576, she argues that the ALJ
13 was required to translate a "slight to moderate limitation" from a workers' compensation term of
14 art into a value useful in a Social Security case, and had he done so, he would have found that
15 "slight to moderate" in workers' compensation terminology means a 20% work function
16 impairment value.  Contrary to her assertion, however, there is no *requirement* that the ALJ make
17 any kind of translation.  *Desrosiers* involved an ALJ who mistakenly used the workers'
18 compensation categories of work and related distinctions *instead* of the Social Security
19 categories.  Here, the ALJ made no such error.  He credited Dr. Barr's ultimate finding that
20 Plaintiff could return to her past work, and the limitation as to pace did not affect this conclusion.
21 ///
22 ///
23 ///
24 ///
25 ///
26 ///
27 ///
28 ///

## CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security.  The clerk of this Court is DIRECTED to enter judgment in favor of Defendant Michael J. Astrue, Commissioner of Social Security and against Plaintiff, Charlotte Moore.

IT IS SO ORDERED.

Dated:   **May 1, 2007**                          /s/ **Dennis L. Beck**
                                                 UNITED STATES MAGISTRATE JUDGE